Let me please the court. My name is John Ayala. I am the attorney for the petitioner, Mr. Luis Chuquillanqi Jr. This case was originally approved. It's an asylum case that was originally granted by the Immigration Court in Los Angeles, in which the court found that the petitioner had established past persecution or well-founded fear based on an imputed political opinion. As stated in the record, the facts are that this young man's father was a counterterrorism commander in the country of Peru. He was charged with arresting terrorists from the Shining Path. He did that for several – he was a commander in the police force for over 36 years. His accomplishments were publicized in newspapers and other publications. He was socially – he was visible in his work. What happened because of his – because he was a commander of this anti-terrorism task force was that he received multiple threats against him and his family. His son, Luis Chuquillanqi Jr., is junior to his senior. He's his son, namesake son. What ends up happening is that this – his junior comes to the United States to seek protection. That was quite a number of years ago, correct? That is correct. He came as a child, and he applied for asylum initially. But the case was in 1993. However, the case was never heard until it was heard by an immigration judge in 1999. His mother and father remained in Peru, correct? They did remain in Peru. And he retired. The father retired from his position with the – The father did retire. And they remained in Peru. When this record was – They remained in Peru. Isn't that correct? They remained in Peru when this record was established, meaning the record of this certified appellate record, they remained in Peru. When he applied for asylum, the parents were still in Peru. However, they lived a very secluded life in which they had to protect themselves constantly from possible retribution. Since this case has been heard, the Board of Immigration Appeals basically reversed the immigration judge. And what ended up happening is we appealed to the Ninth Circuit. So why do you want us to reverse? Well, we want you to – What is the core of your argument? The core of our argument is that this young man faces a potential well-founded fear of future persecution based on his father's efforts and his work in being a counterterrorism police chief. He was threatened. The family was threatened. He was threatened. His children were threatened. And this – What's ended up happening since, and it's been documented in the record, is the fact that many individuals who were arrested during this effort, this anti-terrorism effort, have gotten new trials. We've got over 1,800 people have had their cases overturned, and they stand to have new trials. Over 400 people have been released. Is it your position that the board committed legal error in any way? I believe so. Where did the board commit legal error? Initially in the 2004 decision, they made reference to the fact that country conditions showed that this terrorist group was no longer active in the country. When, in fact, they cited to a case called Matter of AEM, which basically reiterated that. That case was a 1998 decision. At the time they made that statement, the United States had designated the Shining Path as one of 42 foreign terrorist organizations, and that was not addressed. We presented that in our appellate. We presented that to try to present that to the immigration judge when the case was remanded back to the court. However, the court would not hear new additional evidence. Now, was that error? Excuse me? Was that error? Well, the court was hamstrung by the board of immigration appeals order on remand to just issue a new decision that the board had instructed the judge to enter. Are you familiar with our recent case called Fernandez v. Holder? How recent, Your Honor? I'll just pass on it. Go ahead and complete your argument. Well, Your Honor, basically in this particular case, the United States has redesignated this organization as a foreign terrorist organization. He has been threatened. The family has been threatened. The judge found those threats to be credible. The board, however, reversed it using a false assumption that this organization was no longer an active organization. New evidence was presented to the board once the judge refused to consider new evidence. It was presented to the board of immigration appeals, and they said that it was speculative. However, we contend that it was not. We believe that it only enhances the fact that we have a person who's in charge of prosecuting terrorists whose family gets threatened, his son with the same name gets threatened, and this individual faces the potential retribution of a foreign terrorist organization if he returns back to Peru. Okay. Thank you. May it please the Court. My name is Edward Durant. I represent the United States. Are you familiar with Fernandez? No, Your Honor, I'm not. You're not. Go ahead. A reasonable fact finder would not be compelled to conclude that Petitioner demonstrated past persecution or a well-founded fear of future persecution. based on a series of noncommunicated, anonymous, ancient threats. Now, Petitioner's case, the record is very long, but I'd like to draw the Court's attention to the record at page 555, where Petitioner's father is testifying, he was the lead witness, about whether or not his son faced fear or harm, potential harm in Peru. And Petitioner's father stated, yes, they've forgotten about me. Let me ask you a question. Yes, sir. Do you think this case might be suitable for mediation? No, Your Honor. Why not? He has a case. And here's an immigration judge, an I.J. who hears these cases all the time and got to look, you know, view the participants firsthand and whatnot, thought that he was eligible for asylum, and the Board overturned that as they can do. And, you know, he presents a compelling story, or he's been here since he was 14. Why wouldn't mediation be a way of sort of looking at this situation and trying to work something out? Based on this record, Your Honor, he hasn't demonstrated past persecution nor well-founded fear. Well, it's not completely frivolous. It's certainly a very weak case. It certainly persuaded an immigration judge to grant him relief. She did. And the Board reversed her, and counsel respectfully. It's not completely frivolous. He presents a serious claim. It's in counsel's opinion an exceptionally weak case. I can ‑‑ Well, let me ask you this. You haven't read ‑‑ have you read ‑‑ you haven't read Fernandez v. Holder, have you? Now, one of the arguments that's made here, as he just ‑‑ as counsel just advanced a moment ago, was that at ‑‑ when it went back down on remand by the BIA to the I.J., counsel, for the Petitioner, attempted to present additional evidence, correct? Yes, Your Honor. And the I.J. said can't consider it. Based on Melina Camacho. Based on the remand. Okay. Now, we have a case, Fernandez, that comes out and explains what's to happen, what can happen on a remand from the BIA to the I.J. And unless the BIA purposefully restricts the authority of the I.J. on what he can do, the I.J. is free to consider other matters. And here, there was evidence presented about new conditions, and the I.J. refused to exercise any discretion to consider that. He said I'm bound. I can't do that. Why isn't that legal error under Fernandez? This board's decision or the judge's decision predated Fernandez. And secondly, Your Honor, Petitioner has not raised that argument in his opening brief. And even if he had, there's no prejudice at all. The board treated it as a motion to remand. They entertained the evidence. And if it had been sent down, the evidence he did present would show that as of 1993, Shining Path is no longer a viable entity. There's 300, according on page 298 of the record, Your Honor, 300 members left. Mr. Guzman, the head, was arrested in 1992. He has been taken out. They are active certainly in rural areas. And a State Department travel document said that they've been greatly diminished. And that has been since Mr. Guzman's capture in 1992, and they've only been sporadically active. You add that to the fact that Petitioner's father has stated that these people don't even remember him or don't even know who he is. Petitioner is similarly situated. How are they going to remember him? He was a little kid. He was never in front of the paper. And by the way, the only time that Petitioner presents the fact that his father was a famous lawman is from one series of articles from 1995, well after he left. Only his picture in the paper arresting some big-time thug from Peru who looks like an embezzler. No ties to Shining Path. Now, let me ask you, is it your dispute? I mean, you don't accept his testimony that he was head of this government law enforcement agency? I accept his testimony that he served honorably in the Peruvian Army. But the only evidence that he was in the paper that he was a public lawman is from 1995. Now, it shows what appears to be Petitioner's father arresting what looks like a savings and loan guy who embezzled $400 million with no ties whatsoever to Shining Path. And ironically, Petitioner's father's testimony from 1955 shows that it appears that this Manrique character is also out of jail. Mr. Durant, you prepared this case very well, but you obviously didn't know about Fernandez. I don't see what difference it makes whether the case was decided before or after the BIA's decision. Fernandez is now the law and says that the BIA doesn't restrict the IJ unless it expressly says so. So that was the law at all times. The fact that it was stated later doesn't make any difference. So there is legal error on the part of the IJ. So it has to go back. And you don't seem to recognize that. You've come well-prepared to argue a case, but you didn't know how the law has changed. And I think you ought to reconsider before you brush off the idea of mediation. You're hearing this now from two judges of this panel. I'm not brushing it off, Your Honor. What? Your Honor, I'm not brushing it off. I would never do that. All right. Well, don't. I certainly won't. You gave it a very short shrift. But as a matter of course, this issue was never briefed in the open briefing. No, no. You gave me an hour to close. So you may take a moment to rethink. But, again, the evidence he did present shows that not only that Shining Path has been further reduced, that they're nothing but a shell of themselves from the heyday of the 1980s when they started from a professor who was a Maoist. And now just 300, is it 200 or 300, are militants. That's their estimated strength, and that's from a U.S. government document. That is a company plus or battalion minus. That's their strength in a country of 27 million people. So the counsel understands the cautions from the court and will certainly discuss it with his superiors when he returns. But personally, the counsel does not. How long is it going to take you to discuss it with your superiors? It can do it today, Your Honor. And when would the court like an answer? Why don't you say tomorrow? Can you get it to us tomorrow? Yes, sir. Okay. In conclusion, the petitioner has not demonstrated past persecution or a well-founded fear. He relies on canalis for both propositions. This case is usually distinguishable. The record does not show that Shining Path either has a personal interest in Petitioner or that they have the ability to carry this out. The record evidence in canalis was much stronger. Petitioner talks about the fact that certain people have been released from penitentiary, that they may pose a threat to him or his father. However, even Petitioner's father stated that the reason he never stated that these guys were in jail and won't get me. And we don't know who they were, if they were mere conscripts, if they even know Petitioner's father. So in conclusion, Petitioner has not demonstrated past persecution or a well-founded fear of future persecution. If there are no further questions, this concludes the government's presentation. Thank you. Thank you. You have a minute or two left. Yes, sir. Obviously, we're open always to mediation, for sure, Your Honor. We attempted, when we went back to the court, Fernandez not being the case, we attempted to do that. Just that, just what was described. We presented very ñ we challenged the board's order on remand in a specific language. You read the transcript, and she said she couldn't consider it, given the nature of the remand. It's clear from the transcript what she said. One of the things that just ñ that we have a situation here where the U.S. Department of State, you know, the council makes an argument that this is no longer an active foreign terrorist organization. However, the U.S. Department of State designates 42 foreign terrorist organizations. And as of October 15, 2010, the Shining Path is still designated as an active foreign terrorist organization. And that is evidence that we'd like to present to the judge, along with the evidence that we tried to submit before. Okay. Thank you. Matter submitted.
judges: Duffy, Noonan, Paez